IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTIOCO CABRERA-GERONIMO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10cv674-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 28 U.S.C. § 2255 motion is before the court on the pleadings, written submissions, and an evidentiary hearing. For the reasons set out below, the undersigned concludes that the motion is due to be denied.

## I.   INTRODUCTION

On April 27, 2009, the petitioner, Antioco Cabrera-Geronimo ("Cabrera-Geronimo"), appeared before this court and, pursuant to a plea agreement, pled guilty[1] to conspiracy to possess with intent to distribute cocaine hydrochloride, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & 846.  As consideration for the guilty plea and pursuant to the plea agreement, the Government agreed to dismiss five counts of the indictment charging Cabrera-Geronimo with using a communication facility (a cellular telephone) to facilitate the drug conspiracy. In addition, the Government agreed to recommend at

---

[1] Cabrera-Geronimo, a Spanish-speaking citizen of Mexico, was at all times assisted by an interpreter, who also assisted his lawyer in communicating with him.

sentencing that Cabrera-Geronimo receive a two-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility, and an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) for timely notifying authorities of his intention to plead guilty.  Subject to Cabrera-Geronimo's compliance with a cooperation agreement contained in the plea agreement, the Government also committed to recommend a sentence without regard to the statutory minimum pursuant to the safety-valve provisions of 18 U.S.C. § 3553(e) & (f) and U.S.S.G. § 5K1.1.  *See also* U.S.S.G. § 5C1.2. The plea agreement also contained a waiver provision whereby Cabrera-Geronimo relinquished his rights to appeal and collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

At sentencing on August 6, 2009, the district court determined Cabrera-Geronimo's base offense level to be 32, based on the amount of drugs attributable to him in the conspiracy.  The court then accepted the Government's recommendation (as provided in the plea agreement) for three levels of reduction pursuant to U.S.S.G. § 3E1.1(a) & (b).  Finding that Cabrera-Geronimo met the safety-valve criteria, and hearing no objection from the Government, the court also applied a two-level reduction pursuant to U.S.S.G. § 5C1.2. Combining Cabrera-Geronimo's adjusted offense level of 27 with his criminal history category of I produced an advisory guideline range of 70 to 87 months.  Because Cabrera-Geronimo met the safety-valve criteria, the court imposed a sentence within the guideline

range – 70 months – without regard to the otherwise applicable statutory minimum.[2]

Cabrera-Geronimo did not take a direct appeal.

On August 3, 2010, Cabrera-Geronimo, proceeding *pro se*, filed the instant § 2255

motion, asserting that he is entitled to an out-of-time appeal based on the allegedly

ineffective assistance of his trial counsel, Russell T. Duraski, for failing to file an appeal that

---

[2] Pursuant to 21 U.S.C. § 841(b)(1)(A), Cabrera-Geronimo faced "a term of imprisonment which may not be less than 10 years[.]" U.S.S.G. § 5C1.2 provides that the district court "shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" where it first finds "that the defendant meets the [safety-valve] criteria in 18 U.S.C. § 3553(f)(1)-(5)." *See* U.S.S.G. § 5C1.2(a). The safety-valve criteria are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

he says he instructed Duraski to file. *See* Doc. Nos. 1 & 12; *see also* Doc. No. 2.[3] This court

set an evidentiary hearing as to this issue and appointed new counsel to represent Cabrera-

Geronimo at the evidentiary hearing,[4] which was held on September 6, 2012. Both Cabrera-

Geronimo and Duraski testified.

After due consideration, the court now concludes that Cabrera-Geronimo's § 2255

motion should be denied.

## II.   DISCUSSION

### A.   General Principles for Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of

*Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325,

1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1)

that "counsel's representation fell below an objective standard of reasonableness" and (2)

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184

(1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313

(11th Cir. 2000). Unless a petitioner satisfies the showings required on both prongs of the

*Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once

---

[3] References to document numbers are to those assigned by the Clerk in the instant civil action or, where indicated, in Cabrera-Geronimo's criminal proceedings. Page references in the pleadings are to those assigned by CM/ECF.

[4] A court-appointed interpreter assisted Cabrera-Geronimo's new counsel in communicating with him in preparation for the evidentiary hearing.

4

a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

## B.      Counsel's Failure to File Direct Appeal

Cabrera-Geronimo contends that his trial counsel, Russell T. Duraski, rendered ineffective assistance of counsel by failing to file a direct appeal after Cabrera-Geronimo instructed Duraski to do so.  Doc. Nos. 1 & 12; *see also* Doc. No. 2.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United State Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal.  *Flores-Ortega*, 528 U.S. at 477.  With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477).  In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing.[5]  *Flores-Ortega*, 528 at 483 ("The ... denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, ... demands a presumption of prejudice.").

---

[5] The Eleventh Circuit has held that these rules apply with equal force when a petitioner waives some, but not all, of his appellate rights through a plea agreement.  *See Gomez-Diaz*, 433 F.3d at 793–94 (applying *Flores–Ortega* in case of partial waiver of appeal rights).

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally has a duty to "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also, e.g., Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007).

At the September 6, 2012, evidentiary hearing, Cabrera-Geronimo testified that, immediately after sentencing and while still in the courtroom, he asked his attorney, Mr. Duraski, to file an appeal on his behalf.[6]  Cabrera-Geronimo, who stated that he can speak and understand "just a little" English, testified that he made this request without the assistance of an interpreter, using what he considered to be the English word for appeal – which he spelled phonetically at the evidentiary hearing as "a-p-p-l-e-e [sic]."  According to Cabrera-Geronimo, Duraski responded to his request by telling him he would come to see him at the jail.  However, Cabrera-Geronimo said Duraski did not come to the jail or contact him again after sentencing.

Cabrera-Geronimo testified that, following his sentencing, he tried to contact Duraski through collect phone calls placed from jail in order to tell Duraski that he wanted to appeal.

---

[6] Because Cabrera-Geronimo's primary language is Spanish, the court-appointed interpreter facilitated communication between Cabrera-Geronimo, the court, and the lawyers during the evidentiary hearing.

He maintained that he called Duraski's office "about twenty times" but said that none of the calls was answered or "processed." Cabrera-Geronimo testified that he also sent Duraski two letters, written by another inmate at his instruction, in an effort to request an appeal. Those letters were not answered by Duraski; nor were they returned to the jail.[7]

Cabrera-Geronimo acknowledged that he discussed the appeal waiver in his plea agreement with Duraski before the change of plea hearing. However, he maintained that he did not understand he was giving up his appeal rights when the Magistrate Judge asked him if he understood what the appeal waiver meant during the change of plea colloquy. According to Cabrera-Geronimo, Duraski never provided him with an estimate of his expected sentence prior to the change of plea hearing. He testified that he wanted to appeal because he thought his 70-month sentence was too long and that he believed a sentence of about 50 months was fair. He stated that he thought he was entitled to a "minor role" reduction in his offense level.

In his testimony at the evidentiary hearing, Duraski stated unequivocally that Cabrera-Geronimo never instructed him at any time to file an appeal and never evidenced an interest in appealing. According to Duraski, Cabrera-Geronimo thanked him profusely after his sentence was pronounced and even took Duraski's hand and pressed his forehead to Duraski's wrist as an expression of gratitude when his sentencing was complete. Duraski

---

[7] Other than by his own testimony, Cabrera-Geronimo did not present evidence of the letters at the evidentiary hearing. He stated that the letters were penned by a fellow inmate known to him as "Mike," and that another inmate, whose actual name he did not know, translated his instructions to Mike, from Spanish to English, to be put in the letters.

stated that he and Cabrera-Geronimo then embraced. He stated that he told Cabrera-Geronimo he would come to see him at the jail after sentencing, and did in fact go to the jail, accompanied by an interpreter, where he talked to Cabrera-Geronimo about forwarding some of his personal effects – which included his wallet, photographs, and a religious medallion – to his family in Mexico.

In contrast to Cabrera-Geronimo, Duraski testified that he fully explained the sentencing guidelines, the applicable statutory minimum, and the safety-valve provisions to Cabrera-Geronimo and that he provided Cabrera-Geronimo with an estimate of the sentence he could expect to receive. Duraski stated that this estimate was slightly higher than the sentence actually imposed.

Duraski testified that he did not receive any telephone calls from Cabrera-Geronimo after sentencing. He stated that he is in his office "regularly" during work hours (generally, at least half the day), and that when he is not in his office during the day, he is usually in court. He said that it would be unusual for somebody to call his office twenty times without reaching him, unless the calls were made before or after work hours. He stated that he is not assisted by a secretary in his office but that the telephone has a voice-mail system for recording calls. He said that although a collect caller cannot leave a message on the voice-mail system, the system would indicate if a collect call had been received. He stated that there was no indication that any such call had been received during the relevant time. Duraski also testified that he never received a letter from Cabrera-Geronimo before or after

sentencing.

Cabrera-Geronimo's testimony regarding whether he instructed Dursaski to file an appeal was squarely in conflict with Duraski's testimony as to this issue, requiring the court to make a credibility determination, taking into account the interests of the witnesses in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, and their demeanor on the stand. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Having carefully attended to the testimony presented at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned finds Duraski to be credible and credits his testimony that Cabrera-Geronimo never instructed him to file an appeal.[8] Conversely, the court finds Cabrera-Geronimo's testimony that he instructed Duraski to file an appeal, and that he repeatedly attempted to contact Duraski by phone and mail after sentencing, not to be credible.[9] Likewise, the court finds incredible Cabrera-Geronimo's testimony that, contrary to his own statements to the court during the change of plea colloquy,[10] he did not understand he was giving up his appeal rights under the waiver provision in the plea agreement. The court therefore concludes that Cabrera-Geronimo's

---

[8] In this regard, the court finds that Duraski had no incentive *not* to file an appeal, had he been asked to do so.

[9] In making its credibility determinations, the court recognizes that it is improper to determine credibility based on the "status" of a witness. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Cabrera-Geronimo's status as a convicted felon nor Duraski's status as a lawyer is determinative.

[10] *See* Case No. 1:08cr236-MHT, Doc. No. 432 at 10-11.

9

desire to appeal is a product of hindsight and was not a sentiment Cabrera-Geronimo made known to his counsel at the sentencing hearing or shortly thereafter.

Even if – as this court has found – Cabrera-Geronimo did not instruct Duraski to file an appeal on his behalf, Duraski had a duty to consult with Cabrera-Geronimo about an appeal if Cabrera-Geronimo reasonably demonstrated an interest in appealing or if a rational defendant in Cabrera-Geronimo's position would have sought an appeal. *Flores-Ortega*, 528 U.S. at 480. Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478; *Thompson*, 504 F.3d at 1206. This court notes that neither Cabrera-Geronimo's original § 2255 motion nor his subsequent filings identify a failure-to-consult claim. However, even assuming that this issue is properly before the court, the court finds that Duraski had no duty to consult further with Cabrera-Geronimo about appealing following sentencing, because the evidence indicates that Cabrera-Geronimo did not reasonably demonstrate an interest in appealing and that a rational defendant in Cabrera-Geronimo's position would not want to appeal. *Flores–Ortega*, 528 U.S. at 480.

As to the former issue, whether Cabrera-Geronimo reasonably demonstrated an interest in appealing, the court finds that, according to Cabrera-Geronimo, his in-court request of Duraski was his only post-sentencing communication with his attorney. He claimed that all other attempts to contact Duraski were unsuccessful. While Duraski acknowledged visiting Cabrera-Geronimo at the jail after sentencing, the visit was to consult

with Cabrera-Geronimo about forwarding his personal effects to his family, and there was no indication from Duraski's testimony that Cabrera-Geronimo mentioned the issue of an appeal during his visit.  For these reasons, the court finds that Cabrera-Geronimo did not reasonably demonstrate an interest in appealing.

For purposes of determining whether a rational defendant would have wanted to appeal, the Supreme Court in *Flores-Ortega* stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Flores-Ortega*, 528 U.S. at 486.  Here, Cabrera-Geronimo was convicted pursuant to a guilty plea under a plea agreement by which he expressly waived his right to challenge his sentence and reserved exceptions only for claims of ineffective assistance of counsel and prosecutorial misconduct.[11]  Cabrera-Geronimo has not suggested that, following the sentencing hearing, he had a viable claim that Duraski's performance was deficient or that

---

[11] It is well settled that appeal waivers are valid if made knowingly and voluntarily.  *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (internal citation omitted).  The plain language of the agreement informed Cabrera-Geronimo that he was waiving an appeal and collateral attack on his conviction and sentence. Case No. 1:08cr236-MHT, Doc. No. 261 at 8-9. The record demonstrates that the court specifically questioned Cabrera-Geronimo during the change of plea hearing about the waiver provision in the plea agreement and that Cabrera-Geronimo indicated he understood its significance.  *See* Case No. 1:08cr236-MHT, Doc. No. 432 at 10-11.  In his § 2255 motion, Cabrera-Geronimo does not challenge the validity of the appeal waiver.  If he did, the court would find his challenge to be without merit.

the prosecution had engaged in any misconduct. Nor has he suggested any other nonfrivolous grounds for appeal.[12]  The terms of the plea agreement were very favorable to Cabrera-Geronimo, resulting in the Government's dismissal of five counts of the indictment, allowing Cabrera-Geronimo to receive sentence reductions for assistance and cooperation, and bettering his chances for receiving a safety-valve reduction.  He did in fact receive the safety-valve reduction and accordingly avoided a mandatory statutory minimum sentence of ten years in prison.  The actual sentence imposed by the district court – 70 months – was 50 months below the statutory minimum and at the low end of the applicable advisory guideline range of 70 to 87 months.  Under these circumstances, the court finds that a rational defendant in Cabrera-Geronimo's position would not have wanted to appeal and that there were no circumstances known or knowable to Duraski from which he should have concluded that a rational defendant would want to appeal.  *Flores-Ortega*, 528 U.S. at 480.

In sum, the court concludes that (1) Cabrera-Geronimo did not instruct Duraski to file an appeal; (2) Cabrera-Geronimo did not reasonably demonstrate an interest in appealing; and (3) a rational defendant in Cabrera-Geronimo's position would not have wanted to appeal.  Therefore, Duraski did not render ineffective assistance of counsel by failing to file a direct appeal on Cabrera-Geronimo's behalf.  Cabrera-Geronimo is not entitled to any relief based on this claim.

―――――――――――――

[12] At the evidentiary hearing, the only issue Cabrera-Geronimo suggested that he wanted to raise in an appeal was whether he was entitled to a "minor role" reduction under the guidelines.  He provided no facts or argument in support of this claim, and, in any event, such a claim would have been barred by the terms of his appeal waiver.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the § 2255 motion filed by Cabrera-Geronimo be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 26, 2012**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 19th day of September, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE